# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| INTERNATIONAL STAR REGISTRY OF ILLINOIS, an Illinois limited liability corporation, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | No. 05 C 6923 |
| OMNIPOINT MARKETING, LLC, a Florida limited liability corporation and RELATIONSERVE MEDIA, INC., a Delaware corporation, | ) ) ) ) ) ) | Judge John W. Darrah |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, International Star Registry of Illinois, filed suit against Defendants, Omnipoint Marketing and RelationServe Media, Inc. International Star's Second Amended Complaint alleges breaches of contract (Counts I and II), fraudulent inducement (Count III), and tortious interference with prospective economic advantage (Count IV). Presently before the Court are Defendants' Motion to Dismiss and Motion to Transfer Venue.

## BACKGROUND

A reading of the Second Amended Complaint and the materials submitted by the parties, including affidavits, supports the following summary of allegations and facts properly considered in determining venue.

Beginning in April 2004, International Star, an Illinois corporation, entered into "various contracts" with Omnipoint, a Florida corporation.[1] The subjects of the contracts were the sale of

---

[1] In May 2005, Omnipoint ceased operations as a result of the sale of all of its assets to RelationServe Access, Inc., a subsidiary of RelationServe Media, Inc. RelationServe and its subsidiaries did not assume any of Omnipoint's liabilities under the terms of the sale.

information and services by Omnipoint to International Star. The contracts specified that Omnipoint would send electronic mail advertisements on behalf of International Star to 150,000,000 different electronic mailing addresses at various costs per thousand messages sent ("CPM").

Omnipoint represented to International Star that it owned only one mailing address database; therefore, the mailing list it intended to sell to International Star was the same list Omnipoint had previously used in conducting advertising broadcasts on behalf of International Star. Upon receipt of Omnipoint's electronic mailing list, International Star used the list to conduct various "test" mailings with its own electronic and computer equipment. After conducting the tests, International Star found that approximately fifty percent of the electronic mailing addresses it received from Omnipoint produced either a "hard" or "soft" bounce.[2] Based on the test results, Omnipoint failed to deliver the proper number of advertising to electronic mailing addresses as specified in its contract with International Star.

The "contracts" attached to the Second Amended Complaint are invoices as described below. On April 8, 2004, Michael Hazelrigg, Vice President and Director of Operations of International Star, signed Invoice No. 5246 (the Invoice is dated April 7, 2004). The invoice includes, in pertinent part:

> By my signature below, I certify that I have read and agree to the provisions set forth in this invoice and to the terms and conditions posted at http://www.omnipointmarketing.com/genterms.html, and that I am duly authorized to bind the following organization ("client") to such provisions. (Hereinafter, "the signature statement").

---

[2] A "hard bounce" indicates that the mailing address did not exist; and a "soft bounce" indicates that the mailing address may have existed at one time or existed in another form but was not an active account at the time it was sent.

The http://www.omnipointmarketing.com/genterms.html web page includes links to "General Terms," "CPM Terms," and "eMail Append Terms." The "General Terms" web page includes a "Disputes" term, which states:

> Each party hereby waives any right to a trial by jury in the event of any controversy or claim relating to these Terms and Conditions. The law of the State of Florida shall apply to any resulting claim or action, and the exclusive jurisdiction and venue for any proceeding brought pursuant to these Terms and Conditions shall be Broward County, Florida.

The "eMail Append Terms" web page includes a "Disputes" term, which includes the same language quoted above. The "CPM Terms" web page includes an "Applicable Law, Jurisdiction, and Venue" section, which states the agreement "shall be governed by and construed in accordance with the laws of the State of Florida, without reference to the principles of conflict of laws. The exclusive jurisdiction and venue for any proceeding brought pursuant to this Agreement shall be Broward County, Florida."

On July 31, 2004, Hazelrigg signed Invoice # 7810 for 240,000,000 CPMs at the total cost of $22,000. The invoice includes the signature statement. On November 19, 2004, Hazelrigg signed Invoice # 7460 for 150,000,000 "Opt in Broadcast" CPMs at the total cost of $30,000 and 150,000,000 Hard Data/Consumer Data CPMs at the total cost of $20,000. The invoice identifies the net total of $50,000 and $0.00 credits. The invoice includes the signature statement.

Invoice # 0007460-IN, dated November 24, 2004, was not signed by Hazelrigg. The invoice identifies 150,000,000 Opt in Broadcast CPMs at the cost of $30,000. The invoice also indicates a "Balance Due" of $30,000; "Payments/Credits" of $ 30,000; and resulting "Balance Due" of $0.00. The invoice contains a RelationServe caption and contains the identical signature

3

statement as the other Omnipoint invoices with the exception that the website referenced is http://www.relationserve.com/terms.html. The invoice also states "REPLACES PREVIOUSLY SIGNED IO #7460."

A second invoice, Invoice 7450-AIN, dated March 31, 2006, also was not signed by Hazelrigg. The invoice identifies 150,000,000 Hard Data/Consumer Data CPMs at the cost of $20,000. The invoice also indicates a "Balance Due" of $20,000; "Payments/Credits" of $20,000; and resulting "Balance Due" of $0.00. The invoice contains the RelationServe caption and the identical signature statement as Omnipoint's invoices with the exception that the website referenced is http://www.relationserve.com/terms.html. The invoice states "THIS IS A DUPLICATE INVOICE."

In its response brief, International Star includes a copy of Invoice 7460A, which is undated and was signed by Hazelrigg on November 23, 2004. This invoice has a different format than the other invoices and does not contain the same information as the other invoices. The invoice does not contain the "Balance Due," "Payments/Credits," and resulting "Balance Due" information found on the other invoices; and it does not contain the signature statement found in the other invoices. The subject of this invoice is 150,000,000 Hard Data/Consumer Data CPMs at the total cost of $20,000. The invoice also states "Replaces Signed IO # 7460."

## ANALYSIS

Defendants seek to dismiss Plaintiff's Second Amended Complaint or, in the alternative, to transfer the cause of action to the United States District Court for the Southern District of Florida.

A challenge to venue based on a forum-selection clause is appropriately brought as a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(3). *See Muzumdar v. Wellness Int'l*

*Network, Ltd.*, 438 F.3d 759, 760 (7th Cir. 2006). Plaintiff bears the burden of establishing that venue is proper when a defendant challenges venue. *See Faur v. Sirius Int'l Ins. Corp.*, 391 F. Supp. 2d 650, 657 (N.D. Ill. 2005). The court may also consider facts outside of the complaint when determining whether venue is proper. *See Continental Cas. Co. v. American Nat'l Ins. Co.*, 417 F.3d 727, 733 (7th Cir. 2005).

The Seventh Circuit has reserved ruling on whether state or federal law applies in a dispute over the validity of a forum-selection clause when the case is dismissed rather than transferred pursuant to 28 U.S.C. § 1404(a). *See IFC Credit Corp. v. Aliano Brothers Gen. Contractors, Inc.*, 437 F.3d 606, 609 (7th Cir. 2006). However, because the validity of a forum-selection clause is determined by the same test under federal, Illinois, or Florida law, the result under these laws in the instant case is the same.

Forum-selection clauses are *prima facie* valid and are enforceable unless the opposing party can demonstrate that the clause is "unreasonable under the circumstances." *M.S. Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972) (*Bremen*); *see also Calanca v. D. & S Mfg. Co.*, 157 Ill. App. 3d 85, 87 (1987); *Benefit Assoc. Int'l, Inc. v. Mount Sinai Comprehensive Cancer Center*, 816 So.2d 164, 168 (Fla, Dist. Ct. App. 2002). The "unreasonable under the circumstances" exception is construed narrowly; and forum-selection clauses are enforceable unless: (1) the forum-selection clause was incorporated into the contract through fraud, undue influence or overweening bargaining power; (2) the forum-selection clause is so difficult and inconvenient that the opposing party would essentially be deprived of their day in court; or (3) the enforcement of the forum-selection clause would contravene a strong public policy. *See Bremen*, 407 U.S. at 12-15; *Bonny v. Society of Lloyd's*, 3 F.3d 156, 160 (7th Cir. 1993).

International Star does not argue that the forum-selection clauses included in the invoices are invalid under federal, Illinois, or Florida law. Instead, International Star argues that the forum-selection clauses were not properly incorporated into the invoices. Whether the forum-selection clauses were incorporated into the invoices is a question of state law. The parties do not agree which state law applies – Illinois or Florida. However, as discussed *infra*, the law as to incorporation of a document by reference in a contract is the same in Illinois and Florida. Accordingly, as to this issue, which law applies need not be determined.

A document is incorporated by reference into a contract if the contract describes the document and expresses the parties' intent to be bound by its terms. *See Arneson v. Board of Trustees, McKendree College*, 210 Ill. App. 3d 844, 849-50 (1991); *188 LLC v. Trinity Indust., Inc.*, 300 F.3d 730, 736-37 (7th Cir. 2002) (*188 LLC*) (applying Illinois law); *Jenkins v. Eckerd Corp*, 913 So.2d 43, 51 (Fla, Dist. Ct. App. 2005) (*Jenkins*). The incorporation of the document must be clear and specific. *See 188 LLC*, 300 F.3d at 736; *Jenkins*, 913 So.2d at 51.

In the instant case, the contract (invoice) states that by signing the invoice, the signee certifies that he has read, and agrees with, the provisions set forth in the invoice and the terms and conditions posted on a specific web page, in addition to having the authority to bind the party to these provisions. This provision clearly expresses Omnipoint's intent to be bound by the terms and conditions set forth on its web site and clearly states that by signing the invoice, the signee intends to be bound by the terms and conditions. Furthermore, this provision clearly describes the document (in this case, the document is published on a web site) that is to be incorporated into the invoice. International Star cites several cases in support of its argument to the contrary; however, these cases are readily distinguished. *See Landmark Structures, Inc. v. F.E. Holmes & Sons Const. Co.*, 195 Ill.

6

App. 3d 1036, 1047-48 (1990) (disclaimer not incorporated into the contract because when the party sought out the additional terms and conditions on the reverse side of the contract – as directed on the front of the contract – the reverse side was blank); *188 LLC*, 300 F.3d at 737 (same); *Atlantic Mut. Ins. Co. v. Metron Eng'g & Const. Co.*, 83 F.3d 897, 900 (7th Cir. 1996) ("General Conditions of the Contract for Construction" was not incorporated by reference into contract that listed "contract documents" as "General, Supplementary, and other Conditions" when "Supplementary" and "other Conditions" did not exist – to do so would "necessarily be incorporating additional documents that apparently do not exist."). Contrary to these cases, the terms and conditions here existed and were located where indicated.

Based on the above, the forum-selection clauses were incorporated into the invoices and is controlling for the contracts (invoices) that included such reference.

International Star also argues that even if the forum selection is enforceable, it does not apply to claims involving the invoices which do not contain the signature statement and those not signed by Hazelrigg. The Second Amended Complaint and the parties' briefs fail to identify how many contracts actually existed between the parties and which contracts have been allegedly breached. Instead, the parties have provided multiple invoices, many of which appear to be for the same services. Of the three contracts (invoices) identified by International Star as not being subject to the forum-selection clause, only one can be construed as a valid contract. The 7460-IN and 7460A-IN invoices are clearly not contracts for services but are receipts that were sent to International Star to document that the invoices had been paid in full.[3] That leaves the 7460A invoice as the only one that

---

[3]Furthermore, International Star concedes in it response brief that these invoices would not be valid written contracts because they are unsigned.

7

does not include the signature statement. Drawing all inferences in International Star's favor that Invoice 7460A represents a contract that was breached,[4] this breach of contract would not be subject to the forum-selection clause. International Star seeks to have this claim remain in this Court.

International Star also argues that its tort claims are not governed by the forum-selection clause because neither tort claim requires interpretation of any contract between the parties.

A forum-selection clause applies to tort claims which require interpretation of the contract. *See Boatwright v. Delott*, 267 Ill. App. 3d 916, 918 (1994) (fraud claim "intimately connected with the contract's terms" because its resolution required analysis of employment relationship included in the contract itself). Here, International Star alleges that it was fraudulently induced to enter into the contracts in dispute based on misrepresentations made to International Star, of which International Star relied upon in entering the contracts, and that it suffered monetary losses and loss of goodwill as a result of entering into the contracts in dispute. International Star's claim for tortious interference with prospective economic advantage alleges that International Star entered into the contracts in dispute with Omnipoint and that Omnipoint's failure to abide by the contracts' terms caused International Star to suffer monetary losses and loss of goodwill. International Star's allegations demonstrate that the tort claims are intimately connected with the contracts at issue. Accordingly, the forum-selection clause is applicable to these claims.

Based on the above, venue for all claims, except those related to Invoice 7460A, lie in the United States District Court for the Southern District of Florida. If a lawsuit is filed in the wrong venue, the court may dismiss the complaint or, if it is in the interest of justice, transfer the suit to a

---

[4]In light of multiple invoices for what appears to be the same work and the absence of clarification provided by the parties, it is unclear whether Invoice 7460 and 7460A are both alleged to have been breached or if one superceded the other.

court in which venue is proper. *See* 28 U.S.C. § 1406(a). In lieu of dismissal of the instant case, and in the interest of justice, the cause of action is transferred to the United States District Court for the Southern District of Florida.

Even if Plaintiff had demonstrated that transfer of the instant suit was not proper pursuant to 28 U.S.C. § 1406(a), Defendant has demonstrated that transfer is proper pursuant to 28 U.S.C. § 1404.

In general, "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). A transfer is proper if: (1) venue is proper in both the transferee and transferor courts; (2) it is for the convenience of the parties or witnesses; and (3) it is in the interest of justice. *Law Bulletin Publishing Co. v. LRP Publications, Inc.*, 992 F. Supp. 1014, 1017 (N.D. Ill. 1998) (*Law Bulletin*). District courts have broad discretion to grant or deny motions to transfer, and the burden is on the moving party to establish that the transfer is warranted. *Heller Financial, Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1293 (7th Cir. 1989) (*Heller*).

Venue is proper for all of Plaintiff's claims in the United States District Court for the Southern District of Florida and is only proper for Plaintiff's claims related to Invoice 7460A in the United States District Court for the Northern District of Illinois.

When evaluating the relative convenience of the parties and witnesses, the court considers: (i) the plaintiff's initial forum choice, (ii) the convenience of the witnesses, (iii) the relative ease of access to other evidence, (iv) the situs of material events, and (v) the relative convenience of the

parties in litigating in the respective forums. *Amoco Oil Co. v. Mobil Oil Corp.*, 90 F. Supp.2d 958, 960 (N.D. Ill. 2000) (*Amoco*); *Georgouses v. Natec Resources, Inc.*, 963 F. Supp. 728, 730 (N.D. Ill. 1997) (*Georgouses*).

The plaintiff's initial choice of forum is usually afforded substantial deference, particularly when it is the plaintiff's home forum. *Kamel v. Hill-Rom Company, Inc.*, 108 F.3d 799, 802 (7th Cir. 1997). However, there are other factors to consider; and the weight given to the plaintiff's choice can vary, depending on the circumstances of each individual case. *Georgouses*, 963 F. Supp. at 730; *Law Bulletin*, 992 F. Supp. at 1017. For example, where the plaintiff's choice of forum is not the situs of the material events, plaintiff's choice of forum is entitled less deference. *See Heller Fin., Inc. v. Riverdale Auto Parts, Inc.*, 713 F. Supp. 1125, 1129 (N.D. Ill. 1989).

Both Defendants' places of business are Florida. Plaintiff's principal place of business is Illinois. The situs of the material events – the alleged breach of contract, fraud, etc. – occurred in Florida, where the Defendants conducted their business. Since deference is granted to Plaintiff's initial forum choice, this factor weighs in favor of denying Defendants' Motion to Transfer. However, in light of the forum-selection clause and because the situs of the material events is in Florida, deference to Plaintiff's choice of forum is diminished.

All parties argue that it would be more convenient for their witnesses in their chosen forums. However, a defendant will not be granted a transfer merely by presenting a long list of witnesses and claiming their inconvenience in testifying in the challenged forum. *Law Bulletin*, 992 F. Supp. at 1018. Defendants have not met their burden of showing that the United States District Court for the Southern District of Florida would be significantly more convenient. This factor weighs in favor of denying Defendants' motion.

Regarding the ease of access of other evidence, most evidence for this litigation is likely to be found in Florida, primarily at the Defendants' principal places of business. Accordingly, this factor weighs in favor of transfer.

The analysis of the interest of justice focuses on the efficient administration of the court system, as opposed to the private considerations of the litigants. *Amoco*, 90 F. Supp.2d at 961. This includes considering: (i) the relative familiarity of the courts with the applicable law, (ii) the relation of the respective forums with the issue in the case, and (iii) the relative congestion of the court dockets. *Amoco*, 90 F. Supp.2d at 961; *Georgouses*, 963 F. Supp. at 730.

Both courts are familiar with the applicable law, regardless of whether Illinois or Florida law is to be applied; both states also have an interest in the issues of the case, and the congestion in both courts is similar. However, in light of venue lying in Florida as to almost all of Plaintiff's claims, it would be in the interest of justice to have all of the claims heard in one court. Accordingly, this factor weighs strongly in favor of a transfer.

In addition to weighing the convenience of the parties or witnesses and the interest of justice, the venue-selection clause is also considered. Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an "individualized, case-by-case consideration of convenience and fairness." *See Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964). A forum-selection clause, such as is presently before the Court, is a significant factor that figures centrally in the district court's decision. *See Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 30 (U.S. 1988). As the venue-selection clause applies to all but one of the contracts in dispute, it weighs strongly in favor of transferring the cause of action.

11

In sum, the above factors weigh in favor of transferring the entire cause of action to the United States District Court for the Southern District of Florida.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is denied. Defendants' Motion to Transfer Venue is granted. Plaintiff's cause of action is transferred to the Central District of California pursuant to 28 U.S.C. § 1406(a) and 28 U.S.C. § 1404.

Dated: September 6, 2006

JOHN W. DARRAH
United States District Court Judge